Horacio Cordero, Jr., Petitioner and Appellee-Appellant, v. District Court of San Juan, Respondent, and Celestina Abarca Sanfeliz, Respondent and Appellant-Appellee.

No. 8449.   Argued December 20, 1941.—Decided January 30, 1942.

R. Díaz Collazo for appellee-appellant.   Harry M. Besosa for appellant-appellee.   José López Baralt as amicus curiae.

Mr. Chief Justice Del Toro delivered the opinion of the court.

On October 27, 1941, the judge assigned to act in vacation of this court (juez de turno) in passing upon a petition for certiorari filed by Horacio Cordero, Jr., to review the proceedings had in the District Court of San Juan in an action of unlawful detainer prosecuted against petitioner by Celestina Abarca Sanfeliz—an incident on the furnishing of an appeal bond—rendered a decision in the following terms:

"For the reasons set forth in the foregoing opinion, the petition in this case is hereby sustained as to the order made by the District Court of San Juan on October 3, and denied as to the judgment rendered on September 16, 1941, and, consequently, the above-mentioned order of October 3, 1941, is set aside, not because it is erroneous on the merits, but because it was made prematurely and without having afforded the defendant an opportunity to have surety Antonio Pérez Amador testify regarding the property offered by him as

security in the appeal bond, notwithstanding the fact that the court below had reopened the case pursuant to its order of October 2, 1941. Let the record be returned to the lower court for further proceedings.''

Feeling aggrieved by that decision, both the petitioner and the plaintiff in the unlawful detainer proceedings appealed therefrom to the full court. The appeals were prosecuted together and they will be considered jointly in a single opinion herein.

The petitioner maintains that the order of the district court of October 3, 1941, should be set aside, not because it was premature, but because it is erroneous, and that the judgment of the acting judge in vacation should be supplemented by holding that the bond furnished is sufficient to perfect the appeal taken by him from the judgment in the unlawful detainer proceedings.

The plaintiff in the dispossession proceedings on the contrary urges that the acting judge in vacation went too far, and that his decision should be reversed and another rendered instead denying the petition for certiorari. According to her, as the appeal bond is, and was held by the district court to be, insufficient, the judgment of eviction in the unlawful detainer proceeding has become final (*firme*) and its execution should not be delayed.

As already stated, an action of unlawful detainer was brought, in the District Court of San Juan, by Celestina Abarca Sanfeliz against Horacio Cordero, Jr. The property involved was a two-story brick house located at No. 13 Comercio Street in this city. The alleged ground for the eviction sought was the termination, upon notice, of a contract of lease for an indeterminate period at a monthly rental of $115.

On September 16, 1941, judgment was rendered for the plaintiff and the defendant, therefore, was ordered to vacate the premises within fifteen days after the judgment became final.

On the following day, Horacio Cordero was served with notice of the judgment and five days later he took an appeal therefrom to this Supreme Court, and submitted a bond whereby he and the sureties Antonio Pérez Amador and Andrés Morales, both of legal age, property owners, and domiciled in San Juan, bound themselves to plaintiff Abarca in the sum of $500 to answer for any damages which might be caused to her by reason of the appeal, and for the costs, it being understood that the defendant was moreover bound to make further monthly deposits of $115 until the final determination of the case.

The signatures of the principal and his sureties on the instrument were followed by their oaths. Pérez Amador swore that he owned property worth $8,000—a house and lot at Stop 3½, Puerta de Tierra—and Andrés Morales that he owned property worth $5,000—a house and lot at No. 2 Las Casas, Santurce. The bond was approved by the court on the same day, September 22, 1941.

On September 24 plaintiff Abarca challenged the bond on several grounds, one of them being that the sureties did not own the properties claimed under oath to be theirs, and exhibited accordingly a certificate from the registry of property stating that no properties appeared recorded in the name of the sureties either in Puerta de Tierra or in Santurce.

On September 26 both parties appeared before the district court through their attorneys. The defendant asked to be granted a term to produce a certain deed, evidencing the solvency of one of the sureties, and the court allowed him until the following day to do so. . He also stated that from an investigation made by him the sureties owned property. The plaintiff objected and the court made an order directing the sureties to appear ''on the 29th instant, at 2 o'clock in the afternoon, to testify regarding any property owned by them.''

On the day set—September 29—the parties appeared again through their counsel. The sureties did not appear and the clerk reported that he had failed to notify them.

The defendant submitted a certificate from the registrar of property attesting to the fact that surety Morales owned the property which he had stated under oath to be recorded in his name; he admitted that the property mentioned in the oath to the bond by Pérez Amador, the other surety, was not recorded in the latter's name, and further said:

"....I then advised my client about the facts and he has just delivered to me from Pérez Amador, to make good his signature on that bond, the sum of $500, to be deposited to answer for that signature on the bond in question."

To the question from the court: "And to answer for the oath given by him, what is the sum?," the attorney replied:

"As to that I have nothing to say. The object of my intervention in the present suit is exclusively the protection of my client's interests. I am answerable to the court for my acts, and I hereby tender to the court $500 to be deposited with the clerk to secure his signature which is good for $500; and here is the $500 (he lays the bills on the clerk's desk in open court)."

Plaintiff's attorney objected and the court sustained the objection. The defendant insisted through his attorney and said:

"There is no need to resort to the bond. The bond is properly constituted in this way. Each surety is answerable for $500, and having admitted myself that this property is not recorded in the name of this man,....I place at the disposal of the court a sufficient amount in cash, which is the best kind of security to answer at the proper time for that signature; if this suit is lost in the Supreme Court, my colleague, my distinguished adversary, need not resort to the registry but can attach the $500, which is the best security; and this is why I say that this signature is worth $500, and that this surety is good for $500; and that this bond is good and need not be resorted to. The oath to the bond, which is a thing apart from the bond, the acknowledgment, is something different from the bond."

The plaintiff insisted on her objection and the court said:

"The Court: The court has already ruled to refuse to admit this $500 as a deposit until a decision is reached on the sufficiency of the bond which has been challenged."

Counsel for the parties continued to argue the point, and when plaintiff's attorney said that the insolvency of surety Pérez had been admitted, defendant's attorney replied:

"I have not admitted the insolvency. I admit that this man does not own the house, and criminal liability is another question, but he is solvent up to $500 and his signature is good for that amount."

The argument still went on, and finally the following incident occurred:

"Attorney Besosa: I insist and still tender the $500 in cash to be deposited to secure the signature of surety Antonio Pérez Amador on this bond,....Does not Your Honor accept the deposit of the $500 in cash?

"The Court: The court has already repeatedly ruled that the deposit to make good the signature of Pérez Amador is not accepted.

"Attorney Besosa: Exception taken. How long may I be allowed by the court to file the memorandum?

"    .    .    .    .    .    :    .    .

"The Court: You can have until Friday at noon to file the memorandum."

The 3d of October had also been set for the settlement of the transcript of the evidence to perfect the appeal, but only defendant appeared through his attorney. Shortly after the examination of said transcript had commenced, the said attorney moved the court to order the summoning of surety Pérez to be examined, and to acknowledge the tender of the $500 he was depositing in the clerk's office.

The answer of the judge was that the incident regarding the bond was only pending as to the filing of a brief. The defendant insisted that his surety had not been duly summoned to appear on September 29 by the clerk, to which the court replied that the attorney, nevertheless, had finally submitted the case, which was open only for the filing of a brief.

The defendant went on submitting further argument and finally the following incident occurred:

"Judge: Let us dispose of this situation. The court desires to state that what defendant's attorney is doing is just reproducing a motion filed by him yesterday, October 1st, on which the court entered the following order: 'The foregoing motion having been filed and considered, the same is granted and the clerk is directed to issue a writ, summoning Antonio Pérez Amador to appear without fail on October 10, 1941, at 9 a.m., before this court to testify regarding the particulars of said motion, said Antonio Pérez Amador and plaintiff's attorney, Román Díaz Collazo to be served with copies of said motion and of this order.'

"Such is the reason why the court refuses to hear anything further just now.

"Attorney Besosa: If the court please: The setting of such hearing for October 10 will be entirely academic, because by that time the Court will have entered a ruling as to the surety bond, since it has advised this attorney that in case of failure on his part to file a brief before noon today, the court will decide the case. I think that if the court has set this for the 10th, the decision should be postponed until the 10th, otherwise we will not be accorded an opportunity to produce the surety.

"The Court: The court is concerned with the bond being approved in time. We can not approve a bond as late as this. Several days have elapsed since a hearing thereon took place. It is sought to make the bond good at this stage for $500 and to perfect the same in court.

"Attorney Besosa: We take exception to 'the ruling of the court, because it in fact is deciding the bond incident without considering the defendant's brief. For that reason we take an exception."

We have thought it advisable to copy the foregoing excerpts from the stenographic transcript so as to reproduce what took place as truly and correctly as possible.

The theory of the district judge was set forth and reasoned in his written order of October 3, 1941, which reads as follows:

"One of the grounds for challenging the surety bond is that surety Antonio Pérez Amador does not own the house and lot of which he swore to be the owner in Puerta de Tierra. The defendant admits this to be a fact and the certificate from the registry of property shows that there is no record of any property registered as owned by him in Puerta de Tierra.

"At the hearing held on the 29th the defendant offered to deposit the sum of $500 to make good the signature on the surety bond of Pérez Amador, and the court, being of the opinion that such substitution of the bond could not be allowed within the present proceeding where the bond must be approved within the time allowed the defendant for taking an appeal, which term had expired on September 29, refused to accept such deposit, as that would have amounted to the approval of a surety bond after the expiration of the term within which to appeal.

"It is well-settled in this jurisdiction, such being the law, that surety bonds in unlawful detainer proceedings must be filed within the statutory period. And if the bond filed in the present case within said period is insufficient because surety Pérez Amador owns no property, we are now without power to approve the cash security tendered by the defendant in substitution of the bond originally filed. (See *Valladares* v. *Municipal Court*, 16 P.R.R. 139; *Figueroa et al.* v. *Sepúlveda*, 24 P.R.R. 645; *Ramírez* v. *Pérez*, 25 P.R.R. 214; *Barbosa* v. *Fernández*, 28 P.R.R. 283; *Del Castillo* v. *Del Castillo*, 44 P.R.R. 534; *Pol* v. *District Court*, 48 P.R.R. 367; *Hernández* v. *Cruz Román*, 48 P.R.R. 509; *Suau* v. *Pol*, 51 P.R.R. 431).

"The objection to the bond filed in the present case is hereby sustained and, consequently, it is decreed that the same is void, as surety Antonio Pérez Amador does not own the property described therein."

■■ Was this order, which carries with it the loss of the appeal from the judgment in the dispossession proceeding, merely premature as held by the acting judge in vacation, or erroneous as claimed by the petitioner?

There can be no doubt that under the law and the decisions of this court construing the same, appeal bonds in unlawful detainer proceedings must be filed within the period of five days fixed by the statute. Sections 630 and 631 of the Code of Civil Procedure, 1933 ed., equivalent to Sections 10 and 11 of the Act of 1905 regulating the matter.

In the instant case the security consisted of a bond for $500 to answer for any damages and costs and of the monthly cash deposits to be made as the rent became due. The bond was filed and approved within the statutory period. There

is no question as to this, nor is there any as to the monthly deposit of the rent which has been effected as promised.

The question arose from the objection to the sureties on the ground that they did not own the real property of which they stated to be the owners in their oaths to the bond. It was ascertained that one of them did own such property. With respect to the other surety—Pérez Amador—it was admitted that he did not own such property, without conceding that he did not own any other, whereupon the sum of $500 in United States legal currency was tendered to be deposited as proof of his solvency to answer for the obligation which he had contracted.

We think that, taking into account the purpose for which the bond was given (Restatement of the Law, Security, p. 517, 4 C.J.S. 997) that the same was filed and approved in time and in proper form, that the solvency of one of the sureties was established, and the amount in cash of the undertaking had been tendered by the other surety, there was nothing further to investigate. Appellee's interests were secured and the appeal should have been proceeded with.

■ Does the applicable law admit that interpretation, which we consider to be the proper one for the purpose of doing substantial justice in the present case, if account is taken of all the interests involved? Let us see.

Section 11 of the Unlawful Detainer Act—Section 631 of the Code of Civil Procedure, 1933 ed., already cited—requires only an undertaking to the satisfaction of the court. The bond herein complied with such requisite. It was for $500 and as the court considered that the sureties, according to this statements under oath, owned sufficient property to answer for that amount, it deemed the bond to be sufficient. The essential fact was the existence of a security covering the entire amount involved. As the full amount of such security was tendered in cash by one of the sureties when

his solvency was challenged, the court ought necessarily to have been likewise satisfied.

It is insisted, however, that there was the admission that the surety did not own the real property, the ownership of which he asserted under oath when the bond was executed; but, irrespective of the fact that such admission was made, it was not admitted that the surety did not own at the time any other property, and this, in any event, would render premature the order of October 3 of the district court, since the same was made before hearing the surety on the matter, as was held by the acting judge in vacation. We think that although the argument had force before the cash was tendered, it ceased to have any after such tender.

The district court apparently supposed that the purpose sought by tendering the $500, the amount of the security, was to substitute the bond, and in our opinion it was this supposition which led it into error.

Here the bond was good and sufficient on its face. The solvency of the sureties was challenged and during such proceeding, in order to show the solvency of one of the sureties, the amount of the bond was tendered in cash but the court refused to accept the same. The petitioner and appellant, in support of his conduct, quotes from Brandt's Suretyship Guaranty, vol. 1, 3d ed., as follows:

"A surety may, in order to avoid justification, deposit in court the amount for which he is bound."

What the general law—Section 355 of the Code of Civil Procedure, 1933 ed.—requires where an undertaking with sureties is involved is that such sureties be "residents and householders or freeholders within Puerto Rico" and "are worth the sums specified in the undertaking."

A householder is defined as:

"A master of a family; a person who has charge of, and provide for, a family or household; one who occupies a house with his family; one who keeps house with his family; the occupier of a house; the

head of a household; the master or chief of a family. The term implies the idea of a domestic establishment or the management of a household, and of residence. It has been held to include married women, widows, widowers, and bachelors, provided they constitute the head of a family." 30 C. J. 474, 475.

A freeholder, according to the same authority, is defined:

"A term which has received a great many definitions, but generally used to designate the owner of an estate in fee in land." 27 C. J. 896.

So that sureties upon an undertaking may be either real property owners or householders who do not own real property but who, like the former, "are worth the sums specified in the undertaking," and it was shown in the case at bar that the surety Pérez was at least worth the sum specified in the undertaking at the time the same was tendered in cash to the court when his solvency was challenged. 71 C. J. 1620.

In virtue of all the foregoing considerations, and mindful of the liberal spirit which inspired our decision in *Oliver* v. *Soto,* 57 P.R.R. 407, where the opinion of the court was delivered by Mr. Justice Hutchison, we think that we do substantial justice herein if we amend the judgment of the acting judge in vacation appealed from and remand the case to the district court with directions to allow the surety Pérez Amador or the defendant and appellant in his behalf, to deposit the sum of $500 in justification of his solvency within two days from the entry of this judgment in the district court. Second paragraph of Section 306 of the Code of Civil Procedure, 1933 ed.

As to the other question raised in the certiorari proceeding, viz., the nullity of the judgment in the action of unlawful detainer, the judgment of the acting judge in vacation will be affirmed. Such a question is not one to be considered in a certiorari proceeding but in an appeal at the proper time.

As we have reached the foregoing conclusions, it is evident that the appeal taken by the plaintiff in the unlawful

detainer proceeding from the decision of the acting judge in vacation must be overruled.

Mr. Justice Todd, Jr., and Mr. Justice Snyder took no part in the decision of this case.